**YU | MOHANDESI LLP**

**B. Ben Mohandesi** (SBN 214921)
213.377.5505 | bmohandesi@yumollp.com
**Brett B. Goodman** (SBN 260899)
213.375.3543 | bgoodman@yumollp.com

Attorneys for Creditors
Shellpoint Partners LLC, and New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>Eduardo Velis Jr.,<br><br>Debtor. | Case No.: 15-26125-A-7<br>DC No.: KWS-003<br><br>Chapter 7<br><br>**OPPOSITION TO DEBTOR'S MOTION FOR AN ORDER TO SHOW CAUSE FOR VIOLATION OF DISCHARGE ORDER PURSUANT TO 11 U.S.C. § 524(A) AND § 105**<br><br>The Honorable Michael S. McManus |

Pursuant to Local Rule 9014-1, creditors Shellpoint Partners LLC, and New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing (collectively, "Shellpoint") hereby respond to the Motion For An Order To Show Cause For Violation Of Discharge Order Pursuant to 11 U.S.C. § 524(a) and § 105 ("Motion for Issuance of OSC" or "Motion."), of Debtor Eduardo Velis Jr. ("Debtor").

## I.  INTRODUCTION

Debtor's Motion for Issuance of OSC incorrectly states that Shellpoint knowingly or willfully violated the discharge injunction by engaging in collection activity after this Court entered the discharge, and even after the subject property was sold to a third party at a trustee's sale. To reach this conclusion, the Motion for Issuance of OSC ignores critical facts, which establish that Shellpoint did not violate the discharge injunction at all, let alone willfully. First, the communications Shellpoint sent to Debtor after the discharge were to enforce the lien, not attempts to collect from Debtor personally. Second, there is no evidence that Shellpoint received notice of the trustee's sale--it did not--and Debtor ignored Shellpoint's inquiries regarding the status of the property.

Regardless, Debtor now seeks an award against Shellpoint for compensatory damages—including for emotional distress Debtor allegedly suffered as a result of a dozen letters he received over the course of over two years—and deterrent sanctions. However, the allegations presented by Debtor do not satisfy his burden of establishing by clear and convincing evidence that Shellpoint knowingly or willfully violated the discharge injunction. Thus, Debtor's Motion for Issuance of OSC should be denied, and the Court should decline to issue an Order to Show Cause.

## II. RELEVANT FACTS

On or about August 2, 2001, Debtor and his now ex-wife, Claudia Velis, entered a Home Equity Credit Line Agreement with Capital One, FSB (the "HELOC"). The HELOC had a credit limit of $10,000.00 and was secured by real property located at 8308 Villa View Drive, Citrus Heights, California (the "Property"). Shellpoint began servicing the HELOC in or around February 2014 on behalf of the creditor at that time, PYOD, LLC. Debtor defaulted on the HELOC in August 2014, at which point the outstanding principal balance was about $9,560.00.

Debtor filed this Chapter 7 case on July 31, 2015. (Docket ("Dkt") 1.) Debtor's schedules indicated that Shellpoint's claim is secured by real property located in Sacramento, California (*not* Citrus Heights, California); the Property was scheduled as having a value of $210,882.00, with two encumbrances: a senior claim for $235,384.00 held by Select Portfolio Servicing and a junior claim for $10,639.00 held by Shellpoint. (Dkt 1, Schedules A & D.) In his Statement of Intent, Debtor indicated his intent to surrender the Property. (Dkt 1 at 36.) On or about August 6, 2015, Shellpoint was purportedly notified of this case through first class mail sent from the Bankruptcy Notification Center. (Dkt 10.)

On November 12, 2015, Debtor received a discharge, and notice of the discharge was served on November 14, 2015. (Dkt. 25-26.) Shellpoint was listed on the service list for the Notice of Discharge at two addresses: PO Box 1410, Washington, MI 48094 and 55 Beattie Place, Ste 600, Greenville, SC 29601-2165. (Dkt. 26.) The case was closed on December 4, 2015. (Dkt. 29).

Debtor alleges that from about January 27, 2016 into 2018 Shellpoint mailed at least twelve letters to Debtor "seeking payment or some other work out option to 'resolve' the amount owed on the debt." (Declaration of Debtor's counsel, Kyle Schumacher, Dkt. 50, ¶ 9; Dkt. 51, Exhibits in support of Motion, Ex. G.) These letters include statements with the current amount secured by the Property, information regarding bankruptcy debt forgiveness options that Debtor could take

advantage of if he wanted to extinguish the lien, privacy notices and fee schedule notices. (*See* Dkt. 51, Ex. G.) Where applicable, the correspondence contained the following (or a substantially similar) notice to Debtor:

> If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof.... However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. (*See Id.*)

Debtor further alleges that, on or about January 11, 2017, a Trustee's Deed Upon Sale was recorded with the Sacramento County Recorder's office, conveying Debtor's interest in the Property to Silver Bullet, LP. (Dkt. 50, ¶ 8; Dkt. 51, Ex. F.) According to the Trustee's Deed Upon Sale, the amount of the unpaid debt secured by the Property was $287,765.78 and the Property sold on December 27, 2016 for $194,900.00. (*Id.*) Debtor has provided no evidence that Shellpoint received notice that the trustee's sale had been scheduled, that it received notice of the Trustee's Deed Upon Sale, or that it received any monies from the sale. In fact, Shellpoint did not receive any notice or proceeds related to the trustee's sale. At the time of the sale, the outstanding principal balance secured by the HELOC was approximately $11,000.00.

One of the letters Debtor complains about, dated August 1, 2017, supports that Shellpoint had not received any notice that a sale had purportedly occurred several months earlier. In that letter, Shellpoint indicated it had been unsuccessful in contacting Debtor by phone and stated it "is extremely important that you contact our office to let us know what your intentions with the property are." (*See* Dkt. 51, Ex. G.)

Debtor contends that his counsel sent a letter to Shellpoint on or about August 18, 2017, informing it of the bankruptcy case and discharge order. (Dkt. 50, ¶ 10; Dkt. 51, Ex. H.) The letter did not mention that the Property had been sold. *Id.*

This case was reopened on May 29, 2018 in order for Debtor to seek sanctions

– 4 –
OPPOSITION TO MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT

against Shellpoint for purported violations of the discharge injunction. (Dkt. 32.) On or about the same date, Debtor filed his initial Motion for Sanctions for Violation of the Discharge Injunction against New Penn Financial, LLC, dba Shellpoint Mortgage Servicing on substantially the same grounds as the present Motion. (Dkt. 34.) The Court dismissed Debtor's initial Motion without prejudice on July 16, 2018, explaining the Motion's "serious deficiencies" in its order entered July 17, 2018. (Dkt. 42). Among other issues, the Court found that Debtor did not meet his burden of proof because the Court could not determine from the Motion "that any of Shellpoint's contacts with the debtor constituted discharge violations." (*Id.*). Specifically, the Motion did "not give adequate background and history of Shellpoint's claim, including when it was incurred, whether it was secured and the collateral for the claim, whether the claim is over or under secured, who has possession of the collateral, who legally and/or equitably owns the collateral, etc." (*Id.*)[1]

On or about October 3, 2018, Debtor filed the pending Motion for Issuance of OSC. (Dkt. 47.)

### III.　LEGAL ARGUMENT

Debtor's present Motion does not cure the "serious deficiencies" this Court identified when it dismissed his prior Motion. Debtor once again has failed to meet his burden of proof, and this Motion should be dismissed, this time with prejudice.

**A.　Legal Standard For Sanctions For Civil Contempt**

Debtor seeks an order to show cause for violation of the discharge order

---

[1] Although the initial Motion vaguely referred in places to Shellpoint's claim being based on a mortgage, the Court noted that it did not: say when the mortgage was incurred, identify the property securing the claim, say what has happened with the property since the case was filed, say whether the debtor had surrendered the Property as he indicated he would do in his Statement of Intention, etc. (Dkt. 42.) The Motion indicated Debtor had transferred his interest in the Property in January 2017 to an entity named Silver Bullet, L.P., but did not indicate whether Debtor had sold the property, whether it was a short sale, what happened with Shellpoint's claim when Debtor's interest transferred, whether Shellpoint consented to the transfer, how much Silver Bullet paid for the Property, whether the senior mortgage was paid off, whether and how much Shellpoint received on account of its claim from the transfer, etc. (*Id.*)

pursuant to 11 U.S.C. § 524(a) and § 105.

There is no private right of action under the Bankruptcy Code for violations of a discharge injunction. *See* 11 U.S.C. § 524; *Walls v. Wells Fargo Bank*, 276 F.3d 502, 508-09 (9th Cir. 2002); *Cady v. SR Fin. Services (In re Cady)*, 385 B.R. 756, 757-58 (Bankr. S.D. Cal. 2008); *Barrientos v. Wells Fargo Bank*, 2009 WL 1438152 *4, 5 (S.D. Cal. Dec. 07, 2009). Rather, a debtor may only seek damages for violations of the injunction by invoking the Court's contempt powers under 11 U.S.C. § 105. A party who knowingly violates the discharge injunction can be held in contempt under 11 U.S.C. § 105(a). *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008) (citing *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)).

The moving party must prove by clear and convincing evidence that the offending party violated a specific and definite order of the court. *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). The violation must have been willful. The party seeking the sanctions must prove that the creditor: (a) knew the discharge injunction was applicable, and (b) intended the actions which violated the injunction. *See In re Zilog, Inc.*, 450 F.3d at 1007 (quoting *In re Bennett*, 298 F.3d at 1069). The burden then shifts to the contemnor to demonstrate why it was unable to comply. *In re Bennett*, 298 F.3d at 1069.

In addition to its authority under section 105(a), a bankruptcy court has the inherent power to impose sanctions for bad-faith conduct. *In re Dyer*, 322 F.3d at 1196. This inherent authority is recognized in Section 105(a), which states: "No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). By granting bankruptcy courts authority to "issue orders necessary 'to prevent an abuse of

process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that . . . exists within Article III courts." *Caldwell v. United Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996).

Inherent sanction authority is wide in scope and powerful in effect, and therefore courts should exercise it with discretion and restraint. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id*. Accordingly, <u>a court must make an explicit finding of bad faith or willful misconduct.</u> *Dyer*, 322 F.3d at 1196; *see also Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) ("We insist on the finding of bad faith because it ensures that 'restraint is properly exercised' and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments." (citation omitted; quoting *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989))).

A court is justified in finding bad faith conduct if it finds that a party is "delaying or disrupting the litigation or hampering enforcement of a court order." *Primus Auto. Fin. Servs., Inc.*, 115 F.3d. at 649 (9th Cir. 1997) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)). The standard for finding bad faith conduct is high, such that the conduct at issue must be more egregious than mere negligence or recklessness. *See Dyer*, 322 F.3d at 1196; *see also Pite Duncan, LLP v. United States Bankr. Court (In re Cabrera-Mejia)*, No. CV 09-0631 DMG, 2011 U.S. Dist. LEXIS 140658, at *40-42 (C.D. Cal. Dec. 6, 2011) ("[T]he Bankruptcy Court abused its discretion in issuing sanctions based on its inherent authority.")

"Courts should be cautious when authorizing contempt proceedings. Orders to show cause should not issue merely because someone requests one." *Costa v. Welch (In re Costa)*, 172 B.R. 954, 963 (Bankr. E.D. Cal. 1994). "Obtaining an order to show cause requires a demonstration of facts that, if not rebutted, could be sufficient

to warrant an order of contempt." *Id*. As the court explained in *Costa*:

> Contempt is serious business that nobody takes lightly. The mere existence of an order to show cause suggests that the court has made a preliminary determination that an order of contempt is a realistic possibility. When issued based on allegations that are unlikely to warrant an order of contempt, the order to show cause smacks of bullying and creates perceptions that call the court's impartiality into question.

*Id*. at 963-964.

**B.   Debtor Has Not Demonstrated Facts Warranting An Order Of Contempt**

Here, Debtor has not demonstrated facts warranting an order of contempt because there is no evidence that Shellpoint willfully violated the discharge injunction, or that it engaged in any bad faith conduct. To the contrary, the evidence demonstrates that Shellpoint merely took reasonable steps to enforce a lien.

A discharge injunction only prohibits efforts to collect debts as a *personal liability* of the debtor. *See* 11 U.S.C. § 524(a)(2). A discharge does not extinguish a lien; rather, a creditor's right to foreclose on a mortgage securing the debt survives the bankruptcy. *Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 577 B.R. 772, 783-84 (BAP 9th Cir. 2017). "While the discharge generally prohibits creditors from communicating with discharged debtors in an effort to extract payment, lienholders usually must communicate with debtors in order to enforce their liens." *Id* at 784. As this Court noted in its order dismissing Debtor's prior Motion (Dkt 42):

> "If the debtor still owns an interest in the property [...] while the debtor may not have personal liability on Shellpoint's claim due to the discharge, Shellpoint may still send statements to the debtor as the owner of its collateral, without violating the discharge injunction.

In cases similar to the one at hand, courts have found that the debtor failed to meet his or her burden of showing the creditor violated the discharge injunction at all, let alone knowingly. *See, e.g., In re Freeman*, Case No: 2:11-bk-34162-NB, 2018 WL 4216653 at *13 (Bankr. C.D. Cal., Sep. 4, 2018) (debtor failed to meet burden where communications were careful to advise that creditor was only pursuing *in rem*

rights, not *in personam* liability.) For instance, in the case of *In re Freeman*, the correspondence at issue notified the debtor that "[i]f this debt is in or has been discharged in a bankruptcy proceeding, be advised that this communication is not an attempt to collect a debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation." *Id*. Similarly, the correspondence at issue here contained comparable notifications to Debtor, for example:

> If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof.... However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. (*See* Dkt. 51, Ex. G.)[2]

Therefore, Debtor has failed to meet his burden of proof.

After the sale of the Property, Shellpoint's communications to Debtor continued because Shellpoint never received notice of the sale, and Debtor never responded to inquiries from Shellpoint regarding the status of the Property. In light of Shellpoint's ignorance of the sale, those communications cannot be construed as attempts to collect from Debtor personally. Thus, there are no facts warranting a contempt order.

Finally, the Court observed in its order dismissing Debtor's prior Motion without prejudice that said Motion did "not address important discrepancies in the record and the bankruptcy petition." (Dkt. 42.) In his present Motion, Debtor made no attempt to address those discrepancies, despite the Court identifying them for Debtor and allowing him to file a new Motion. For instance, while Debtor's schedules identified Shellpoint's collateral real property as located in Sacramento, California, Shellpoint's statements sent to Debtor, as well as the Trustee's Deed Upon

---

[2] Certain of the letters Debtor complains of, such as the privacy notices, did not include this statement. (*See* Dkt. 51, Ex. G.) However, those letters did not include any language that could be construed as Shellpoint seeking to collect from Debtor personally. (*Id*.)

– 9 –
OPPOSITION TO MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT

Sale, show the Property is located in Citrus Heights, California. (*Compare* Dkt. 1, Schedules A & D , with Dkt. 51, Ex. G.) Because Debtor failed to remedy the issues the Court identified in his initial Motion, the Court should deny Debtor's current Motion with prejudice.

## IV. CONCLUSION

For the reasons set forth herein, the Court should deny Debtor's Motion for Issuance of OSC with prejudice.

DATED: November 19, 2018

                                YU MOHANDESI LLP

                                By   */s/ B. Ben Mohandesi*
                                       B. Ben Mohandesi
                                         Brett B. Goodman
                                         Attorneys for Creditors
                                         Shellpoint Partners LLC, and New Penn
                                         Financial, LLC d/b/a Shellpoint Mortgage
                                         Servicing

# CERTIFICATE OF SERVICE

I certify that on November 19, 2018, a copy of the foregoing was filed and served electronically in the CAEB system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system as described below. Parties may access this filing through the Court's system.

DATED: November 19, 2018

By: */s/ B. Ben Mohandesi*
B. Ben Mohandesi